1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7
8
9
10
11
12
13
14

| | |
|---|---|
| AMERICAN SAFETY CASUALTY INSURANCE COMPANY,      )  ) | CASE NO. C16-0044 RSM |
|     Plaintiff,    )  )  ) | |
|   v.    )  ) | ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT |
| HAPPY ACRES ENTERPRISES CO., INC., a Washington corporation, *et al.*,   )  )  ) | |
|     Defendants.    )  ) | |

15
16

## I.     INTRODUCTION

17
18
19
20
21
22
23
24
25
26
27
28

This matter comes before the Court on Plaintiff's Motion for Partial Summary Judgment. Dkt. #18. Plaintiff seeks judgment in its favor on its breach of contract and declaratory judgment claims, and asks the Court to enter judgment against Defendants in excess of $285,000. *Id* at 15. Plaintiff further requests an Order declaring that Defendants are obligated to indemnify it for its losses and that Plaintiff has exclusive right and title to certain funds currently being held in the registry of the San Juan County Superior Court. *Id.* Defendants argue that because there are genuine issues of material fact related to the actions taken by American Safety prior to, during and after the arbitration in the underlying matter, summary judgment is not appropriate. Dkt. #27. For the reasons discussed herein, the Court disagrees with Defendants and GRANTS Plaintiff's motion.

ORDER
PAGE - 1

## II.    BACKGROUND

This matter arises out of an underlying construction contract dispute.   The parties appear to agree to the following facts:

1. American Safety Casualty Insurance Company ("American") issued Performance Bond No. OKC607701 ("Bond") on Happy Acres Enterprises Co., Inc.'s (Happy Acres") behalf.   Dkts. #27 at 2 and #19 at ¶ 1, Ex. A.   Under the Bond, Doe Bay Water Users Association, Inc. ("Doe Bay") was named as the obligee, and Happy Acres as principal.   Dkt. #19, Ex. A.   The penal sum of the Bond was $664,632.86 and was issued as to the contract dated November 15, 2010, between Doe Bay and Happy Acres for the construction of the Slow Sand Filter Facility located in Doe Bay, Washington.   *Id.*

2. Prior to the issuance of the Bond, Happy Acres executed a General Agreement of Indemnity ("GAI") as partial consideration for American's issuance of the bonds on Happy Acres' behalf.   Dkt. #19 at ¶ 2, Ex. B.

3. The GAI provides in part:

    **II.  INDEMNITY AND HOLD HARMLESS**

    A.  The PRINCIPAL and INDEMNITORS, jointly and severally, shall exonerate, hold harmless, indemnify and keep indemnified the SURETY from and against any and all claims, demands, liability, losses, costs, and expenses of whatsoever kind or nature, including court costs, attorneys' fees, adjusting costs and investigative costs, and from and against any and all other such losses and expenses which the SURETY may sustain, suffer or incur: (i) By reason of having executed or procured the execution of BONDS; (ii) By reason of the failure of the PRINCIPAL or INDEMNITOR to perform or comply with any of the covenants or conditions of this Agreement, including but not limited to the payment of all premiums due for BONDS; (iii) In enforcing any of the covenants, obligations or conditions of this Agreement; . . . (v) In prosecuting or defending any action or claim in connection with

ORDER
PAGE - 2

any BOND, whether SURETY at its sole option elects to employ its own counsel or permits or requires PRINCIPAL and INDEMNITORS to make arrangements for the SURETY's legal representation; . . . (viii) As a result of liability incurred or expenses paid in connection with claims, suits or judgments relating to an obligation, CONTRACT, or a BOND, including, without limitation, attorney's fees and all legal expenses, including in-house attorney's fees, adjusting fees or investigative fees, and all fees and costs for investigation, accounting, adjusting, engineering or other professional services related to the adjustment of claims and losses deemed necessary or appropriate in the sole discretion of the SURETY.

B.  Payment shall be made to the SURETY by the PRINCIPAL and INDEMNITORS as soon as liability exists or is asserted against the SURETY, or upon the demand of SURETY, whether or not the SURETY shall have made any payment therefore. . . .

C.  In the event of any payment by the SURETY, the PRINCIPAL and INDEMNITORS further agree that in any account between the SURETY and the PRINCIPAL, or between the SURETY and the INDEMNITORS, or either or both of them, the SURETY shall be entitled to reimbursement for any and all disbursements made by it in good faith in and about the matters contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity, or expediency existed; and, that the vouchers or other evidence of any such payments made by the SURETY shall be prima facie evidence of the fact and amount of the liability of PRINCIPAL and INDEMNITORS to the SURETY.  In addition to the payments to be made to SURETY as set forth above, PRINCIPAL and INDEMNITORS agree to pay to SURETY interest on all disbursements made by SURETY at the maximum rate permitted by law calculated from the date of each disbursement.

Dkt. #19, Ex. B at II. A., B. and C. (bold in original).

4.  The GAI also included an assignment clause as follows:

**III.  ASSIGNMENT**

A. The PRINCIPAL, and the INDEMNITORS as their interests may appear in the following subsections of this paragraph, hereby assign, transfer, pledge and set over to SURETY effective as of the effective date of each BOND executed by SURETY, the rights and

ORDER
PAGE - 3

property described hereafter, as collateral, to secure any and all obligations in this Agreement and any other indebtedness or liabilities of the PRINCIPAL or INDEMNITORS to the SURETY, whether heretofore or hereafter incurred: (i) All the rights of the PRINCIPAL or INDEMNITORS in, and arising in any manner out of any CONTRACT;…(iv) All the right, title and interest of the PRINCIPAL or INDEMNITORS in and to any actions, causes of action, claims or demands whatsoever which the PRINCIPAL or INDEMNITORS may have or acquire against any party to any CONTRACT, or actions, causes of action, claims or demands arising out of or in connection with any CONTRACT including but not limited to those against obliges [sic] on bonds, design professionals, general contractors, subcontractors, laborers or materialmen or any person furnishing or agreeing to furnish or supply labor, material, supplies, machinery, tools, inventory or other equipment in connection with or on account of any CONTRACT and against any surety or sureties of any obligee, general PRINCIPAL, subcontractor, laborer, or materialmen; (v) All monies retained and any and all monies that may be due or which hereafter become due on account of any CONTRACT, bonded or unbonded, or on any promissory note or account receivable; . . . .

….

Dkt. #19, Ex. B at ¶ III. A. (bold in original).

5.  In approximately March 2013, Happy Acres filed an arbitration demand against Doe Bay relating to the sand filter contract with the American Arbitration Association ("Arbitration").  Dkts. #22 at ¶ 5 and #19 at ¶ 3.  Doe Bay brought a counterclaim against Happy Acres regarding Happy Acres' alleged deficiencies in performing the sand filter contract.  Dkts. #22 at ¶ 6 and #19 at ¶ 3.

6.  While the Arbitration was pending, Happy Acres recorded a mechanics' lien against Doe Bay's property and, on October 6, 2014, filed an action in San Juan County Superior Court to foreclose on the mechanics' lien and alleging breach of contract against Doe Bay ("San Juan County Action").  Dkt. #19 at ¶ 4.  The San Juan

ORDER
PAGE - 4

County Action was stayed on November 6, 2014, pending the outcome of the Arbitration. *Id.*

7. In late December 2014 and early January 2015, Doe Bay also tendered a default claim against the Bond to American. Dkts. #22 at ¶ 7 and #1 at ¶ 16.

8. American joined as a party to the Arbitration in March 2015 after Doe Bay brought counterclaims against American pursuant to the Bond. Dkt. #19 at ¶ 3.

9. The Arbitration hearing was held October 26, 2015, through October 30, 2015. Dkt. #22 at ¶ 11.

10. On December 16, 2015, the Arbitrator entered an award in favor of Happy Acres on its claims against Doe Bay, and awarded Happy Acres $100,714.28. Dkts. #22 at ¶ 14, Ex. 5 and #19 at ¶ 3, Ex. C.

11. The Arbitrator also ruled in favor of American, denying Doe Bay's claim on the Bond. *Id.*

12. Following the Arbitration, Happy Acres sought to confirm the award in the San Juan County Action. Dkt. #19 at ¶ 4. American also asserted rights to the Arbitration award. As a result, Doe Bay interpleaded the funds into the court registry in the San Juan County Action. *Id.*

13. Happy Acres sought attorney fees against Doe Bay in the San Juan County Action. *Id.* In July 2016, the Court awarded Happy Acres $16,439.25 in attorneys' fees and $316.00 in costs, for a total award of $16,755.25. *Id.* at ¶ 4, Ex. D. American asserted a right to those attorney fees and costs and Doe Bay again interpleaded the funds into the court registry. *Id.*

ORDER
PAGE - 5

14. A total of $117,469.53 ("Contract funds") has been interpleaded into the court registry in the San Juan County Action. *Id.*

15. On December 31, 2015, American demanded that Happy Acres reimburse it pursuant to the GAI for it attorneys' fees and costs incurred in the Arbitration. Dkt. #19 at ¶ 5, Ex. E. Happy Acres did not do so.

16. On January 12, 2016, American filed an action for breach of contract, declaratory judgment and unjust enrichment against Defendants Happy Acres Enterprises Co., Inc., Rolf Eriksen and Matilija d/b/a Matilija, Inc. (collectively "Happy Acres"). Dkt. #1. American asserts that through October 31, 2016, it incurred $285,590.35 in attorneys' fees, expert fees, and costs arising out of the Arbitration, the San Juan County Action, and in enforcing Defendants' obligations under the GAI. Dkts. #19 at ¶ 6, #20 at ¶ 5 and #32, Amended Ex. A.

However, the parties dispute the facts surrounding American's participation in the Arbitration. Defendants assert that American joined the Arbitration over their objections; American then did not participate in any meetings, communications or discovery between Happy Acres and Doe Bay in anticipation of the Arbitration proceedings; American's counsel attended the Arbitration but did not participate, did not present any witnesses, did not participate in any of the Arbitration preparation work, either before, during or after the Arbitration, nor assist with preparation of witnesses; and American also had its claims consultant and identified expert witness, Robert Legier, attend all five days of the Arbitration, but he was never called as a witness. Dkt. #22 at ¶ ¶ 7-13. As a result, Happy Acres has asserted the affirmative defenses of Failure to Mitigate, No Reasonable Necessity, and Lack of

Good Faith, among others.  Dkts. #10 at ¶ ¶ 10-19 and *Affirmative Defenses*, #22 at ¶ ¶ 4-13, and #23 at 3-6.

Plaintiff counters that it did not "voluntarily" join the Arbitration; that once it did join the Arbitration, it actively participated in all stages; that defense counsel's failure to cooperate and lack of organization forced it to secure an expert witness of its own to defend itself appropriately; and that Defendants did not have the resources necessary to protect Plaintiff. Dkts. #28 at 6-11 and #29.  As a result, Plaintiff asserts that the fees and costs it incurred were reasonable.

The relevance of these disputed facts, and whether they are material to the analysis of the issues raised in this motion, is further discussed below.

### III.   DISCUSSION

#### A.  Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial."  *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (*citing Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).  Material facts are those which might affect the outcome of the suit under governing law. *Anderson,* 477 U.S. at 248.

The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994).  However, the nonmoving party must make a "sufficient showing on an essential element of her case with

ORDER
PAGE - 7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

respect to which she has the burden of proof" to survive summary judgment.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  Further, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 251.

## B.  Breach of Contract – Indemnity

Plaintiff first argues that the GAI is binding under Washington law, and therefore it is entitled to judgment in its favor on its breach of contract claim.  Dkt. #18 at 10-11.  Defendants essentially argue that there are questions of fact as to whether American breached its duty of good faith under the GAI and therefore whether the indemnity clause is enforceable.  Dkt. #27 at 5-7.

Under Washington law, "[i]ndemnity agreements are interpreted like any other contract[]."  *Scott Galvanizing, Inc. v. N.W. EnviroServs., Inc*., 120 Wn.2d 573, 580, 844 P.2d 428 (1993).  The elements of a breach of contract claim in Washington are: (1) existence of a valid contract between the parties; (2) breach by the defendant; and (3) damages.  *See Hearst Commc'ns, Inc. v. Seattle Times Co*., 154 Wn.2d 493, 115 P.3d 262 (2005).  In this case, Defendants do not dispute that they had a valid contract with American or that they breached the indemnity provision.  *See* Dkt. #27.  Instead, they argue that American owed them a fiduciary duty of good faith and that it was not reasonably necessary or reasonable for American to act the way it did in the underlying Arbitration.  *Id.* at 5-7.  As a result, Defendants argue that the indemnity agreement should not be enforced.  Defendants rely almost exclusively on a Tennessee state case in discussing its position.  *Id.*

The implied duty of good faith and fair dealing "obligates the parties to cooperate with each other so that each may obtain the full benefit of performance." *Badgett v. Sec. State Bank*,

ORDER
PAGE - 8

116 Wn.2d 563, 569, 807 P.2d 356 (1991).  Washington courts typically imply this duty into "every" contract.  *See, e.g.*, *Badgett*, 116 Wn.2d at 569.  No Washington court has specifically addressed whether an implied duty of good faith applies to an indemnity agreement associated with a surety bond.  However, Washington law, in accord with a majority of jurisdictions, imposes upon a surety a general duty of good faith.  *Wellman & Zuck, Inc. v. Hartford Fire Ins. Co.*, 170 Wn. App. 666, 677, 285 P.3d 892 (2012), *petition for review filed*, No. 88066-2 (Wash. Nov. 6, 2012); *see PSE Consulting, Inc. v. Frank Mercede & Sons, Inc.*, 267 Conn. 279, 303, 838 A.2d 135 (2004) ("'[T]he weight of authority seems to be on the side of recognizing a duty of good faith.'" (quoting Troy L. Harris, *Good Faith, Suretyship, and the IUS Commune*, 53 MERCER L. REV. 581, 587 (2002))).

Here, the Court finds that Defendants have failed to raise material issues as to the actions of American during the underlying Arbitration.  Defendants complain that:

- Happy Acres specifically requested that American Safety not join the arbitration;

- American Safety never demanded that Happy Acres deposit funds nor did American Safety tender its representation in the arbitration to Happy Acres;

- American Safety did not diligently participate in any of the pre-arbitration proceedings or arbitration proceedings;

- At least one American Safety attorney, and sometimes two, attended all five days of the arbitration proceedings without calling a single witness;

- American Safety also had its claim consultant and identified "expert witness," Robert Legier, attend all five days of the arbitration proceedings without ever being called as a witness; and

ORDER
PAGE - 9

- The surety's interests were fully within the experience and abilities of Mr. Murray, who represented Happy Acres in defense of substantially the same claims as those brought against American Safety.

Dkts. #27 at 5-6 and #22 at ¶ ¶ 7-13 and Exhibits thereto.  With the exception of the objection to joinder of American in the Arbitration, Defendants provide no evidence to support their allegations.

In fact, to the contrary, the record demonstrates that American did not "voluntarily" join the Arbitration, but that once it joined, it actively participated.  Dkts. #31 at ¶ ¶ 5-6, #29 at ¶ ¶ 2-4 and Ex. B and #30 at ¶ 3.  Further, American and its counsel continued to communicate with Mr. Murray in an effort to coordinate with Happy Acres, streamline costs, and efficiently defend against Doe Bay's claims.  Dkt. #29 at ¶ 8, Ex. B.  American sought discovery from Doe Bay and defended against Doe Bay's discovery requests.  Dkts. #29 at ¶ 9, #31 at ¶ ¶ 9-10 and #30 at ¶ 6.  American participated in numerous conference calls with counsel for Doe Bay and Happy Acres and participated in all of the prehearing conferences related to the Arbitration.  Dkts. #29 at ¶ 9, #31 at ¶ 8 and #30 at ¶ 5.  American prepared its exhibits and submitted an Opening Arbitration Brief.  Dkts. #29 at ¶ 10 and #31 at ¶ 11.  Counsel for American, Mr. Blischke and Ms. Dishaw, directed the following Happy Acres witnesses on follow-up testimony: Phil Beverly, Rolf Eriksen, Gary Sale, and Justin Paulsen.  Dkts. #29 at ¶ 11, #31 at ¶ ¶ 12 and 14 and #30 at ¶ 16.  Counsel for American took the lead on cross-examination of the following Doe Bay witnesses: Mr. Ted Wixom, Mr. Robert Tate, Barry Buchanan, P.E., and Mike Lawless.  Dkts. #29 at ¶ 11, #31 at ¶ ¶ 12 and 14 and #30 at ¶ 16.  American also submitted a Closing Arbitration Brief.  Dkt. #29 at ¶ 14.

ORDER
PAGE - 10

Further undermining Defendants' bald assertions are certain email correspondence between Defendants' counsel and American's counsel.  For example, a day after the deadline for submission of the parties' Opening Arbitration Briefs, American's counsel received the following email from Mr. Murray: "Will you please send me your brief in WORD? There are some things I would like to 'crib' from and a WORD copy will make that easier."  Dkt. #29 at ¶ 17, Ex. D.   After Arbitration, American's counsel received an email from Happy Acres' President, Rolf Eriksen, with the subject line "In appreciation":

> Dear Todd – I just want to take a minute to thank you for the work you have done on the behalf of American Safety and me. I was gratified by the way you and Meredith systematically emasculated the Doe Bay defense. The Doe Bay folks should never have been allowed to do what they did. What cowards. You have to know that this has been a withering, health threatening, financial draining, ignominious campaign of misinformation on the part of the Doe Bay people to somehow get American Safety and me to pay for their egregious behavior and totally screwed up project. I am not so experienced in these matters but it doesn't take some sort of brain child to realize that Mr. Harris was not all that pleased with them…..You and Meredith and Bob and Michael, of course, were a formidable team. I am truly gratified. For them to use American Safety as some sort of God Father who was going punish me for not wanting to cop to their specious allegations is beyond all belief. I think they are getting what they deserve and you have had a huge part in it. You command great respect….

> So, thank you.

> Rolf

Dkt. #29 at ¶ 1, Ex. A.  The record further demonstrates that Plaintiff reasonably believed that Defendants could not adequately protect its interests.  *See* Dkts. #31 at ¶ 7 and #29 at ¶ 18, Ex. E.

Because Defendants do not dispute that they entered into the GAI and that it requires them to indemnify Plaintiff, and because this Court has determined that Defendants fail to raise a genuine dispute as to any material fact with respect to Plaintiff's duty of good faith, the Court

ORDER
PAGE - 11

finds in favor of Plaintiff on liability.  An express indemnity agreement executed between a surety and its indemnitors is to be strictly enforced.  *See Commercial Ins. Co. v. Pacific-Peru Constr. Corp.*, 558 F.2d 948, 953 (9th Cir. 1977).   Therefore, Plaintiff is entitled to reimbursement of its costs and expenses in connection with the underlying matter and the instant matter to enforce the GAI.

In a sworn Declaration, American submits that its losses and expenses through October 31, 2016, totaled $285,590.35.  Dkts. #20 and #32 and Exhibit A thereto.  Under the GIA, Defendants agreed that "vouchers or other evidence of any such payments made by the SURETY shall be prima facie evidence of the fact and amount of the liability of PRINCIPAL and INDEMNITORS to the SURETY."  Dkt. #19, Ex. B at II. C.  Accordingly, the Court finds in favor of Plaintiff in the amount requested.

### C.  Assignment Clause

The Court next turns to Plaintiff's argument that it is entitled to an Order declaring that the funds currently being held in the registry of the San Juan County Superior Court were assigned to it on the date the bond was issued.  Dkt. #18 at 13-14.  Defendants fail to address this argument at all.  *See* Dkt. #27.

Defendants agreed to an Assignment clause when they entered into the GAI.  Dkt. #19, Ex. B at ¶ III. A.  That clause specifically provides for an assignment of Defendants' rights to any causes of action and claims to any monies due or which become due under any contract in order to secure their obligations to American.  *Id.*  The assignment became effective no later than the date the Bond was issued, on November 22, 2010.  *Id.* at Exs. A and B at ¶ III (A).

Assignment clauses are enforceable and are routinely used by sureties to establish their right, title, and interest in contract balances.  *See*, *e.g.*, *Gray v. Travelers Indem. Co.*, 280 F.2d

ORDER
PAGE - 12

549 (9th Cir. 1960).  Under Washington law, "[a]n assignee of a contract 'steps into the shoes of the assignor, and has all the rights of the assignor.'"  *Fed. Fin. Co. v. Gerard*, 90 Wn. App. 169, 177 (1998) (quoting *Estate of Jordan v. Hartford Accident & Indem. Co.*, 120 Wn.2d 490, 495, 844 P.2d 403 (1993)).  "[A]ssignment passes to the assignee all title to the property then vested in the assignor, and vests in the assignee title to the property. . . ."  *First Fed. Save. & Loan Ass'n of Coeur D'Alene v. Marsh*, 19 Wn.2d 438, 445, 143 P.2d 297, 300 (1943).  Accordingly, under the GAI, any and all amounts related to the underlying contract belonging or awarded to Happy Acres, including the funds currently in the registry of the San Juan County Superior Court, were assigned to American on November 22, 2010, and American has the exclusive right and entitlement to those funds.

## IV.  CONCLUSION

Having reviewed Plaintiff's Motion for Partial Summary Judgment, Defendants' Response, Plaintiff's Reply, the declarations and exhibits in support thereof, and the remainder of the record, the Court hereby finds and ORDERS:

1. Plaintiff's Motion for Partial Summary Judgment (Dkt. #18) is GRANTED.

2. Defendants are obligated to indemnify Plaintiff for its losses in connection with the underlying matter and those incurred in the instant matter, and are liable to Plaintiff in the amount of $285,590.35, plus prejudgment interest at the rate of 12% per annum from the date of each disbursement until paid in full, and all additional attorneys' fees and costs that have not yet been included in the amount stated above. **Plaintiff shall submit** by way of sworn Declaration all additional evidence supporting the total amount of costs and expenses claimed **no later than fourteen (14) days from the date of this Order**.

ORDER
PAGE - 13

3. Plaintiff has exclusive right and title to the Contract Funds currently being held by the San Juan County Superior Court.

4. Plaintiff's Third Cause of Action for Unjust Enrichment has not been addressed by Plaintiff's motion or in this Order and remains pending.

DATED this 26th day of January 2017.


RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER
PAGE - 14